```
              IN THE UNITED STATES DISTRICT COURT FOR THE
                         DISTRICT OF NEBRASKA

RICHARD Z. SAMUELS,          )
                             )
          Plaintiff,         )       4:09CV3092
                             )
     v.                      )
                             )
NEBRASKA DEPT. OF CORRECTIONS;)      MEMORANDUM OPINION
NEBRASKA STATE PENITENTIARY, )
Health Services; DR.         )
FREDERICK HATHAWAY,          )
Orthopedic Surgeon,          )
                             )
          Defendants.        )
_____)
```

This matter is before the Court on defendant Dr. Frederick Hathaway's ("Hathaway") motion to dismiss (Filing No. 23). The motion to dismiss will be granted.

### *I.   BACKGROUND AND SUMMARY OF COMPLAINT*

Plaintiff filed his complaint on May 11, 2009 (Filing No. 1.) The Court conducted a detailed initial review of the complaint in accordance with 28 U.S.C. §§ 1915(e) and 1915A (Filing No. 12). In that memorandum and order, all claims and all defendants were dismissed except for plaintiff's state-law medical malpractice claim against Hathaway. (*Id.* at CM/ECF p. 7.) The Court determined that it had subject-matter jurisdiction over that claim and permitted plaintiff to complete service of process on Hathaway. (*Id.* at CM/ECF pp. 6-7.)

Plaintiff alleges that Hathaway performed two "complete hip replacements" on plaintiff while he was incarcerated at the Nebraska State Penitentiary in 2005 (Filing No. 1 at CM/ECF p. 4). After Hathaway performed the procedures, plaintiff's "pain

persisted . . . for 2 1/2 to 4 years." (*Id.* at CM/ECF p. 5.) In particular, plaintiff has continually suffered from "un-real pain" which "actually paralyzes the plaintiff" and causes him to take at least six prescription medications. (*Id.*) In early 2009, plaintiff sought treatment from other medical personnel in Illinois who informed him that he needed additional surgical procedures relating to his hips, or, in plaintiff's words, "a complete re-do of the hips." (*Id.*)

       Hathaway timely filed a motion to dismiss and brief in support (Filing No. 23). Plaintiff filed a brief in opposition to the motion (Filing No. 30) and an affidavit (Filing No. 31.)

       II.    **HATHAWAY'S MOTION TO DISMISS**

       Hathaway argues that plaintiff's medical malpractice claim is barred by the applicable statute of limitations (Filing No. 23). In response, plaintiff argues that his claim is not barred because he did not discover his injury until "on or about January 2, 2009," when he sought treatment from other medical personnel in Illinois for his ongoing hip pain (Filing No. 30). The Court agrees with Hathaway and finds that plaintiff's claims are barred by the applicable statute of limitations.

A.   Applicable Statute of Limitations

Under Nebraska law,[1] the statute of limitations for medical malpractice claims is two years.  Neb. Rev. Stat. § 44-2828.  This statute applies to claims alleging that "a health care provider has failed to use the ordinary and reasonable care, skill, and knowledge ordinarily possessed and used under like circumstances by members of his profession engaged in a similar practice in his or in similar localities."  Neb. Rev. Stat. § 44-2810.  The two-year statute of limitations "begins to run upon the occurrence of the alleged act of negligence."  Seevers v. Potter, 537 N.W.2d 505, 509 (Neb. 1995).

Plaintiff alleges in his complaint that Hathaway completed two "complete hip replacements" for him in 2005 (Filing No. 1 at CM/ECF p. 4).  Plaintiff does not specify the dates on which the operations occurred.[2]  (Id.)  The Court therefore assumes the two operations occurred no later than December 31, 2005, and the statute of limitations began to run on that date.  Plaintiff had two years, or until December 31, 2007, to file a medical malpractice claim against Hathaway.  Plaintiff did not

---

[1] "Federal district courts sitting in diversity . . . must apply the forum state's substantive law," and Nebraska substantive law therefore applies.  PHL Variable Ins. Co. v. Fulbright McNeill, Inc., 519 F.3d 825, 828 (8th Cir. 2008) (quotation omitted).  The parties here agree that Nebraska substantive law applies.

[2] In his affidavit, plaintiff states that the two operations occurred on January 7, 2005, and May 24, 2005 (Filing No. 31 at CM/ECF p. 1.)  For purposes of the motion to dismiss, the Court does not consider documents outside the complaint and will instead use the date December 31, 2005, for purposes of this analysis.

file this action until May 11, 2009, or nearly a year and a half after the statute of limitations expired. (*Id.*) Therefore, plaintiff's complaint is barred by the statute of limitations unless he demonstrates that an exception applies.

B.  Discovery Exception

In his complaint, plaintiff claims that he first discovered Hathaway's negligence on January 16, 2009, when he visited another medical provider in Illinois for treatment relating to his hip pain. (*Id.* at CM/ECF p. 4.)  Nebraska law provides that, in the case of medical malpractice actions, "if the cause of action is not discovered and could not be reasonably discovered within [the applicable] two-year period, the action may be commenced within one year from the date of such discovery or from the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier." Neb. Rev. Stat. § 44-2828.  As clarified by the Eighth Circuit:

> Under the discovery principle, a cause of action accrues . . . where there has been discovery of facts . . . sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery. . . . It is not necessary that the plaintiff have knowledge of the exact nature or source of the problem, but only knowledge that the problem existed. . . . A person is on inquiry notice under Nebraska law when he or she "first [has] a feeling" that a problem may exist, if he or she has "the means of knowledge at hand" - "the ability to check his [or her] impression . . . [and thereby] ascertain[ ] the existence" of the problem.

-4-

*Joyner v. Forney*, 78 F.3d 1339, 1341 (8th Cir. 1996) (quotations and citations omitted). Thus, where an individual suspects that medical negligence occurred, and "could have learned, with reasonable diligence, whether his suspicions were true," but simply fails to do so, he cannot take advantage of the discovery exception to the two-year statute of limitations. *Id.*

Plaintiff alleges that the operations complained of occurred in 2005 (Filing No. 1 at CM/ECF p. 4). Plaintiff also alleges that after the two operations, he experienced paralyzing pain which "persisted . . . for 2 1/2 to 4 years" and for which he has taken at least six prescription medications. (*Id.* at CM/ECF p. 5.) Plaintiff alleges that, during this period of time, the pain has been "un-real" and causes him to "collaps[e] in tears." (*Id.*) Thus, plaintiff's own allegations show that he suffered from extreme pain almost immediately after Hathaway completed plaintiff's hip replacements, and at least since November, 2006. While plaintiff may not have understood the "exact nature or source" of his problem, or the extent of his damages, there is no question that he "had a feeling" that something was seriously wrong with his hips since November, 2006, and perhaps earlier.[3] In short, plaintiff suffered from extreme,

---

[3] The Court cannot consider documents outside the pleadings in deciding Hathaway's Motion to Dismiss. *Enervations, Inc. v. Minn. Mining and Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004). However, the Court notes that the additional documents submitted by plaintiff clearly show that plaintiff suspected problems with his hip replacements almost immediately after the second operation. Indeed, plaintiff states in his affidavit that after the second hip operation, "[o]n or about June 27, 2005," he saw Hathaway in his office in Lincoln, Nebraska (Filing No. 31 at

paralyzing pain beginning soon after Hathaway treated him, and for a period of up to four years prior to seeking additional medical help or filing this action.  As in *Joyner*, there is nothing before the Court showing that plaintiff is anything other than "a person of ordinary intelligence and prudence."  Thus, the Court finds as a matter of law that plaintiff could have, with reasonable diligence, determined whether his suspicions regarding Hathaway's negligent treatment were true within two years of Hathaway's treatment, but failed to do so.  In light of this, the discovery exception does not apply.

    C.   Continuing Treatment Exception

Plaintiff also summarily argues that the statute of limitations does not bar his claims because he received "continuing treatment" from Hathaway (Filing No. 30 at CM/ECF p. 3).  Plaintiff is correct that Nebraska recognizes an exception in which "the statute of limitations does not being to run until the act complained of, and any resulting subsequent treatment

---

CM/ECF pp. 1-2).  During that meeting, Hathaway told plaintiff that he would have pain for "quite sometime" and that the hip operations would not correct plaintiff's arthritis.  (*Id.* at CM/ECF p. 2.)  However, before and after that meeting, plaintiff continued to have hip problems and started having other medical problems including "headaches, social issues . . . personal, social, emotional issues, and multiple health concerns."  (*Id.*)  It appears that, despite these numerous and ongoing serious health concerns, plaintiff assumed he would have hip pain forever and elected not to seek additional medical help until January, 2009, and did not file this action until May 11, 2009.  (*Id.*; Filing No. 1.)  Thus, even if the Court were to consider the additional documents submitted by plaintiff, it is clear that plaintiff suspected problems with the care he received from Hathaway in 2005, but took no action.

therefor, is completed." *Joyner*, 78 F. 3d at 1342 (quotations omitted). However, plaintiff's hip replacements occurred in 2005 (Filing No. 1). There is nothing showing that Hathaway provided any treatment to plaintiff after 2005. Thus, Hathaway completed any care he provided to plaintiff, negligent or otherwise, no later than December 31, 2005. (*Id.*) Again, although he continued to experience extreme pain and other problems, plaintiff did not seek any other medical attention relating to his hips, and did not file this action until more than three years after he last received treatment from Hathaway. In light of this, the Court finds that the continuing treatment exception does not apply. Because he has not shown that any exception to the two-year statute of limitations applies,[4] plaintiff's claims

---

[4] Although there is a third exception, equitable estoppel, Plaintiff has not argued or shown that it applies. *Joyner*, 78 F.3d at 1343 (setting forth the six formal elements of equitable estoppel and denying relief where the plaintiff failed to support equitable estoppel claim). In the same vein, Neb. Rev. Stat. 25-213, which permits tolling of the statute of limitations when a person is "imprisoned," does not apply because plaintiff has claimed no legal disability apart from the fact of imprisonment. *See Gordon v. Connell*, 545 N.W.2d 722, 775-76 (Neb. 1996) (affirming dismissal and finding that, absent "a showing of a recognizable legal disability, separate from the mere fact of imprisonment," the statute of limitations is not tolled during a period of imprisonment).

are barred and will be dismissed.  A separate order will be entered in accordance with this memorandum opinion.

DATED this 15th day of March, 2010.

BY THE COURT:

/s/ Lyle E. Strom
_____
LYLE E. STROM, Senior Judge
United States District Court